Dennis Davis of the Goldberg-Sinette Davis Allegiance appearing on behalf of Appellants. The issue before this Court is a very narrow one in complicated litigation that has not yet gone to trial. It was certified to come up on appeal. And that issue is whether a general release with the release of unknown claims is barred by claims arising out of HESCA. The District Court fashioned a formula, reliant upon the State Court case of Winnett v. Price, in which it said that it could look to the underlying HESCA claims in order to not apply general California law, which universally supports the application of settlements and even those including releases of unknown claims, so long as those claims are not as long as the process of negotiating the settlement agreement itself does not involve fraud on the one hand or mental or physical disabilities on the other. Well, the settlement was with respect to what? The unfair, the unlawful detainer? The settlement arose in the context of an unlawful detainer action. And at that time, no one had mentioned any HESCA claims? There had been no HESCA claims filed, although the type of defenses raised in the unlawful detainer action were identical, were similar to the HESCA claims. In other words, Mr. Lloyd raised in the unlawful detainer action the defense that he couldn't be evicted because the underlying transaction was void. Certainly no one articulated, and it's undisputed here, no one articulated HESCA claims. Right. But that's the purpose of having a general release of all claims known and unknown is to not lead to uncertainty, those sorts of issues. Because frequently people don't articulate all the claims, and the purpose of such an agreement is to get rid of everything that's gone on up to that point. And that's precisely what the parties are doing. Well, but the law that the district court relied upon, this is all under California law. It is correct. And so the question is whether or not that kind of settlement of claims applies to HESCA. And where did the district court go wrong in citing a California case that indicates that you can't settle a HESCA claim that you don't know about? The district court didn't go wrong in citing California law and citing and relying upon the case of Winnett v. Price, but it expanded what Winnett said well beyond what that case held. Winnett held, and it gave a very – it gave a summary of California law on this issue in footnote 6 of Winnett. It said, We're cognizant of the many cases that have permitted litigants to avoid the terms of general releases. But it says – and then it goes on to list the types of cases where that arises. First, it says that if there's a situation where the party lacks mental or physical capacity to understand the language of the release, that those are one line of cases. And then it goes on to list another line of cases which it says where the release has been obtained through the signature of the release or through fraud, deception, overreaching, or other unfair conduct. In other words, Winnett says that you can set aside settlements where the settlement agreement, where the release itself was obtained through unfair conduct. It says nothing – it says nothing about going to the underlying conduct as opposed to the settlement agreement and saying, well, we can look to that to see if we can set this aside. The district court added that on to the Winnett. And there's no California case that's ever done that. Right. Well, now, the bankruptcy court, if I understand it correctly, didn't rely on Winnett but reached the same conclusion as the district court. The bankruptcy court said you have to know about your – essentially, you have to know about the HESCO claim before you can settle it. The bankruptcy court said that. It said you have to know about the claims you're releasing, which, of course, is directly contradictory to a release of unknown claims. In other words – Yes, but isn't – isn't the district court's – the bankruptcy court's conclusion consistent with the purpose of HESCO? No. The purpose of – both courts admitted that HESCO claims can be settled. Yeah. The route that was followed by the bankruptcy court in getting to that place was that, as the district court said in its opinion, the bankruptcy court inferred from Section 1695.10, it inferred that the legislature intended to require adequate safeguards. But it admits there's no case law that says that. Counsel, may I just interrupt? I mean, it seems to me the California legislature has made it very clear in Cal Civil Code 1695.10, to which you just referred, when it says, and I quote, any waiver – and dot, dot, dot – of HESCO claims shall be void and unenforceable as contrary to public policy. Isn't that the basis for the inference made by the bankruptcy judge? I don't believe so, Your Honor. Both courts concluded that waiver provision does not stop settlement cases. Yeah, once you have a claim that you know about and you're – and you've asserted it, and in order to resolve the dispute, you settle it. But that's not this case. Well, that's what the bankruptcy court said. You settle cases all the time without having full understanding of the – of your possible legal theories or all the facts. Yes. The question is whether or not you – whether or not this is – whether or not the legislative intent was to make this different.  And there's nothing in the legislative intent that goes that far. There's a statute that says waiver is void. There are no cases interpreting it to that effect. There's no legislative history cited to the effect that that waiver provision is intended to be applied to settlements. And as the district court said in two places, in its opinion, the bankruptcy court inferred that settlements are to require this. And I cite the case to a case that is, of course, cited in the brief for another proposition, and that's the Northrop case, U.S. v. Northrop, where this Court found at 59 Fed 3rd 961 that it's not appropriate to presume Congress, or in this case the legislature's intent, by failing to resolve the question expressly in the legislative intent. The bankruptcy court had far – had little to nothing to base that inference on other than the fact that another provision relating to waivers, in other words, you can't sign a contract waiving your rights in advance to raise HESCA issues. That certainly is void, and both courts agree that that's not the issue here. And both courts agree that that does not affect settlements. I'll reserve time unless there are other questions. There don't appear to be any. Thank you, counsel. Thank you. May it please the Court, Jeff Goodrich, Karen Correpa-Lee, Thomas Moore. Your Honor, I will not review the written pleadings and briefs. Both parties, I think, have very adequately submitted the case law that applies to this case. Rather, I would like to perhaps make a point of emphasis as to the context in which this sort of claim arises in the bankruptcy process. I'm a 25-year bankruptcy attorney, specialist since I graduated from Hastings. This is seen in our practice all the time. And in that practice, we see two different contexts in which lenders attempt to enforce their rights under California law. In the one context, you have a lender who has a deed of trust and takes the efforts to foreclose that are consistent with California law, 90-day notice of default, 30-day notice of trustee sale, during which time the borrower's doorstep is peppered with notices, often offers from attorneys to help, all kinds of opportunities for the borrower to escape the rising pressure of foreclosure. What California legislature said was that's a period of time that is greatly stressful to Californians and their families. And it's during that period of time that we want to make sure that someone who comes along and offers to take title to the property, to solve the homeowner's problem, must educate the homeowner about their right of rescission, must be the one. The statute says it's the equity purchaser, here Mr. Hoffman, who has the obligation of delivering that notice of rescission. Why? It gives the homeowner a cooling-off period to get that advice, to get that counsel. Now compare that to the situation in this case where a release was executed not at a time when people were coming to Mr. Lloyd offering help, but after he'd already signed a transfer of his title to Mr. Hoffman. He was literally on the doorstep of being evicted. And in that situation, he could not have any of the remedies that a homeowner has under a foreclosure process. He couldn't go to a broker to sell. He didn't have title. No broker would even listen to him. Broker looks up the record, sees that he's not the owner. He can't sell. He can't go to a lender because he doesn't have title to give as security. And he can't even get any help from a bankruptcy attorney, who looks at it and says, you're just a tenant and bankruptcy doesn't protect you from an eviction. So these people usually find themselves in the arms of an eviction lawyer, someone who practices eviction law, not bankruptcy law, not secure transactions, and, as in this case, did not understand the HESCA rights. Counsel, I'm sorry to interrupt. Are you claiming that Title Code 1695.10 makes any release of HESCA claims rights void? If we look at the HESCA rights themselves, their rights to knowledge, their rights to be informed, and their rights of rescission. And, yes, my argument to the trial court and to Judge Patel at the district court was that we don't have to find one statute, 1542, or another statute, 1695, trumping one or the other. But, rather, we can meld them. And we can say that if you're going to get a release of a 1695-type claim, you have to comply with 1695. It's not that difficult. And I laid out on page 22 of my brief exactly how you do that. Mr. Hoffman, instead of spending the last four years of litigation time and money, which has been enormously expensive to my client, and to him, by the way, he could have done it the way I've done it in many cases just like it. You sit down in a room, and about ten minutes later, the title is returned, and it's still subject to claiming by Mr. Hoffman, in this case, any monetary money that he provided the debtor. HESCA doesn't give a free ride at all to the debtor. HESCA only requires that the debtor get his property back, so that if there's a negotiation at that point, as Your Honor suggests, a settlement from that point, it's not at the end of a loaded gun. And that is what I believe would be the best result in this case, a clear determination that you must comply with HESCA. And I think that's pretty close to what Judge Patel was trying to get to before And then settlement is possible, then? You're not saying that settlement would not be possible if the appropriate information is given? Absolutely not, Your Honor. You're absolutely correct. There are three possibilities here. One is that no waiver is enforceable, and the parties will agree that there is no waiver possible for HESCA rights. As Your Honor pointed out earlier, under 1695.10, that's prohibited. And counsel or Mr. Hoffman agrees. On the other hand, we both agree that you can settle HESCA rights. There's no dispute about that. The question is, how do you settle it, and can you settle it, if the person who, under HESCA, has the obligation to provide the information to educate Mr. Lloyd in this case? If he does it, if he does it knowingly, if he does it overtly and in the writing of the settlement agreement, absolutely there can be a settlement. All right. Now, reading the record, I meant to ask your opposing counsel this. At one point in the record, it was suggested that there was a separate page notice signed by Lloyd, and I could find nothing in the record that that existed. And I noticed that opposing counsel did not raise this issue again. Was there anything in the record signed by your client? That's an interesting issue, Your Honor. This matter was tried in two phases. In the first phase, the only issue was whether my client had notice, had knowledge. Yes. There at the beginning of the case, and this is not Mr. Hoffman's current counsel, but his original counsel, on the record, before Judge Carlson had a status conference setting the matter for trial, made the statement that no party, including his client, understood that 1695 existed. By the time we got to trial, it changed, and now he was claiming that my client knew about 1695, and even though the settlement agreement makes no mention of it, that, in fact, the parties knew. Just prior to trial, he wanted to introduce this document that is referenced in Judge Patel's decision. I objected. I said, I want to see the original, because my client does not believe he ever signed  It was never submitted. They could not produce the original. Okay. That clears it up. Thank you. Your Honor, in summary, the question before the court, I believe, is a simple one, but it's different the way Mr. Hoffman's framing it. The question is, when a party by statute, by statute governs a matter of significant public policy, particularly in these days, requires a litigant to educate the other party about an important right that involves an important action, that litigant cannot jump over to 1542 after the fact and use it as a loophole to completely vitiate the entire statutory structure of 1695. I think that's part of Judge Patel's decision, and I would ask you to affirm it. Thank you. To briefly respond to the point raised about the signature, I came into the case late. I wasn't involved in the original trial, and it is true that a lot of the evidence wasn't put on then. There was a declaration of Mr. Lloyd's broker put in later, and I think that's in Volume 3, that attached the signed declaration, the declaration of the broker saying that he saw Lloyd sign it. So it was later added on a motion for reconsideration. I'd like to go back for a bit and talk about Mr. Lloyd's being painted as a victim here, yet there was no evidence. There was no evidence placed in the record about his being victimized. You can't tell from the record whether Mr. Lloyd and Mr. Hoffman met, shook hands, talked, or otherwise communicated before this original deal was done. That is not in the record. And to say that Mr. Lloyd's lawyer was a mere eviction lawyer because he couldn't get anything else is simply untrue. The record is clear that he had an experienced real estate litigator that represented him at the time. It's clear that what Mr. Lloyd is saying is that you can never have a general release of unknown claims in the context of HESCA, because he's now saying that there's some obligation of the other party to educate the other side before signing it. That means, in other words, you can only release known claims. There is no case that says that. And if this was an issue of whether HESCA claims could never be released, that should have been decided in the context of a full trial of all of the issues where these issues of who said what to who were raised before the Court. Here there was an extremely short trial where the issue was very limited. In other words, here's a general release, Your Honor, we believe this covers it in the matter of law. The judge disagreed with Mr. Hoffman's lawyer, but it wasn't after a full trial. And for the judges later on to graft on these requirements that you can never have a general unrelease of HESCA claims based upon a catch-all phrase without any trial is simply unsupported by any case law, any authority whatsoever. Thank you. Thank you.
judges: Schroeder, Berzon, Roth